**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Criminal No.: 7:19-cr-56** |
| **v.** | ) | |
| | ) | |
| **MARCELINO AMAYA-REYES,** | ) | **By:    Michael F. Urbanski** |
| **Defendant.** | ) | **Chief United States District Judge** |

<u>**MEMORANDUM OPINION**</u>

This matter is before the court on defendant Marcelino Amaya-Reyes's, represented by counsel, motion to dismiss the indictment in this case. ECF No. 28. For the reasons stated below, the court **DENIES** Amaya-Reyes's motion to dismiss.

**I.**

Defendant Marcelino Amaya-Reyes is a native and citizen of Honduras. Form I-860 Expedited Removal O., ECF No. 28-1. On June 24, 2007, at approximately 5:00 a.m., Amaya-Reyes "illegally . . . wad[ed] across the Rio Grande River approximately 14.1 miles north west of Laredo, Texas[.]" <u>Id.</u> On June 25, 2007, Amaya-Reyes was detained by the U.S. Immigration and Naturalization Service ("INS"). An immigration officer read from INS Form I-867A before asking Amaya-Reyes to make a statement. The INS form provided:

> You do not appear to be admissible or to have the required legal papers authorizing your admission to the United States. This may result in your being denied admission and immediately returned to your home country without a hearing. If a decision is made to refuse your admission into the United States, you may be immediately removed from this country, and if so, you may be barred from reentry for a period of 5 years or longer.
> This may be your only opportunity to present information to me and the Immigration and Naturalization Service to make a decision. It is very important that you tell me the truth. If you lie

> or give misinformation, you may be subject to criminal or civil
> penalties, or barred from receiving immigration benefits or relief
> now or in the future.
>
> Except as I will explain to you, you are not entitled to a
> hearing or review.

Record of Marcelino Amaya-Reyes Sworn Statement, ECF No. 28-2. Pursuant to this advisement, Amaya-Reyes stated that he (1) entered the United States looking for work; (2) intended to reside in North Carolina; and (3) planned to stay in the country for three years. Id. He further asserted that he was not seeking asylum, nor did he fear harm if he was returned to Honduras. Id.

On June 25, 2007, Amaya-Reyes was found to be inadmissible to the United States by the INS because he was not a citizen or national of the United States, he is a native and citizen of Honduras, and he was an "immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act . . . ." Form I-860 Expedited Removal O., ECF No. 28-1. As such, Amaya-Reyes was ordered to be removed, see id., and was so removed on July 6, 2007, Form I-296 Verification of Removal, ECF No. 28-4. Pursuant to his removal order, Amaya-Reyes was prohibited from "entering, attempting to enter, or being in the United States for a period of 5 years form the date of [his] departure from the United States . . . ." Form I-296 Verification of Removal, ECF No. 28-4. From the moment Amaya-Reyes was initially detained by the INS to his removal on July 6, 2007, he was not informed of a right to counsel nor was he represented by counsel.

On May 16, 2019, Amaya-Reyes was charged in a one-count indictment, alleging that around April 25, 2019, without the express consent of the Secretary of the Department of

Homeland Security, Amaya-Reyes was found in the Western District of Virginia after having been previously removed from the country in violation of 8 U.S.C. § 1326(a). Indictment, ECF No. 1. Amaya-Reyes now moves the court to dismiss the indictment pursuant to a collateral attack to prosecution under 8 U.S.C. § 1326(d), asserting that his expedited removal proceeding was fundamentally unfair because (1) his due process rights were violated when he was not afforded his right to counsel; (2) he was not provided his right to counsel under the Administrative Procedure Act; and (3) he was prejudiced by not receiving counsel because counsel would have advised him to withdraw his application for admission, which, if granted, would have prevented Amaya-Reyes from now being charged under § 1326(a). ECF No. 28. The parties jointly agreed to stay the proceedings pending the appeal of United States v. Quinteros Guzman, No. 3:18-cr-31, 2019 WL 3220576 (W.D. Va. July 17, 2019), which addresses the same issues present in this case. See ECF No. 29. Having now been decided, see United States v. Guzman, 998 F.3d 562 (4th Cir. 2021), the court denies the motion to dismiss.

## II.

A defendant may allege a "failure to state an offense" defect in his indictment in a pretrial motion. Fed. R. Crim. P. 12(b)(3)(B)(v). The indictment must be a "plain, concise, and definite statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Furthermore, a court "should regard all well pleaded facts as true when considering a motion to dismiss an indictment." United States v. Dove, 70 F. Supp. 2d 634, 636 (W.D. Va. 1999). "Motions to dismiss indictments, therefore, should generally be denied unless the defendant demonstrates that 'the allegations therein, even if true, would not state an offense.'"

Quinteros Guzman, 2019 WL 3220576, at *2 (quoting United States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004)).

### III.

Section 1326(a) states that "'any alien who . . . has been . . . deported[ ] or removed . . . and thereafter enters . . . or is at any time found in[ ] the United States' without permission shall be punished." Guzman, 998 F.3d at 566 (quoting 8 U.S.C. § 1326(a)). In order to be convicted under this statute, the government must prove "(1) that the defendant is an alien; (2) that he was deported or removed from the United States; (3) that he thereafter reentered . . . the United States; and (4) that he lacked permissions to do so." United States v. Ayon-Brito, 981 F.3d 265, 269 (4th Cir. 2020).

Amaya-Reyes challenges the second element. Specifically, he asserts that his expedited removal proceeding violated his Fifth Amendment due process right to counsel and conflicted with his right to counsel under the Administrative Procedure Act ("APA") because he was not provided with counsel nor given the opportunity to secure counsel at his expedited removal proceeding. As such, Amaya-Reyes argues that his lack of counsel was fundamentally unfair pursuant to § 1326(d), resulting in prejudice. See 8 U.S.C. § 1326(d) (allowing collateral attacks on underlying removal orders that are "fundamentally unfair").

### A.    Amaya-Reyes may collaterally attack his underlying removal order.

For a collateral attack against an underlying removal order to be successful, the defendant must demonstrate that "(1) he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3)

the entry of the deportation order was fundamentally unfair."[1] <u>United States v. El Shami</u>, 434 F.3d 659, 663 (4th Cir. 2005).

Amaya-Reyes's underlying 2017 removal order was not subject to review. Therefore, he is permitted to challenge the validity of his removal because it is an element of the instant offense of illegal reentry. <u>Guzman</u>, 998 F.3d at 566. "[W]hen an expedited removal is alleged to be an element in a criminal prosecution, the defendant in that prosecution must, as a matter of due process, be able to challenge the element—i.e., to contend that the removal was invalid—if he did not have a prior opportunity to do so." <u>United States v. Villarreal Silva</u>, 931 F.3d 330, 335 (4th Cir. 2019) (emphasis omitted); <u>see</u> <u>United States v. Mendoza-Lopez</u>, 481 U.S. 828, 837–38 (1987). As such, the second element has been met.

In order to prove fundamental unfairness under § 1326(d), the defendant "must show that (1) his due process rights were violated by defects in his underlying deportation proceedings, and (2) he suffered prejudice as a result of the defects." <u>El Shami</u>, 434 F.3d at 664. To show prejudice, Amaya-Reyes must prove that "but for the errors complained of, there was a reasonable probability that he would not have been deported." <u>Id.</u> at 665.

## B.    There is no Fifth Amendment due process right to counsel during expedited removal proceedings.

The Due Process Clause did not entitle Amaya-Reyes to counsel when apprehended at the border and promptly removed. Under Fourth Circuit and Supreme Court precedent, "while an alien who has already effected an entry into the United States is entitled to due process, . . . 'an alien who tries to enter the country illegally is treated as an applicant for

---

[1] Amaya-Reyes contends that he is excused from exhausting his administrative remedies. ECF No. 28 at 13. The government has filed nothing to the contrary. As such, the court will consider this element to be met.

admission' and therefore does not have the same status for due process purposes as an alien who has 'effected an entry.'" United States v. Guzman, 998 F.3d 562, 569 (4th Cir. 2021) (emphasis omitted) (citing Department of Homeland Security v. Thuraissigiam, 140 S. Ct. 1959, 1982 (2020)). Moreover, "'an alien at the threshold of initial entry cannot claim any greater rights under the Due Process clause' than those allowed by Congress.'" Guzman, 998 F.3d at 569 (citing Thuraissigiam, 140 S. Ct. at 1964).

Because Amaya-Reyes was merely an "applicant for admission" when he was apprehended at the border, the INA's admission procedures constitute the extent of due process available to him. Id. Guzman, with similar facts and identical procedural posture to the present case, is instructive. In Guzman, the appellant was apprehended at the United States border having entered the country to seek work. 998 F.3d at 565. Expedited removal proceedings were instituted against Guzman following his failure to produce a valid entry document and his decision not to seek asylum. Id. Two years after Guzman's removal, immigration officers encountered him in the Western District of Virginia and charged him with illegal entry under § 1326(a). Id. At trial, Guzman filed a motion to dismiss, arguing that the second element of a charge under § 1326(a) — "that he was deported or removed from the United States" — was not met. Id. Specifically, Guzman asserted that the expedited removal proceedings effectively denied him the right to counsel as protected by the Due Process Clause and afforded by the APA. Ayon-Brito, 981 F.3d at 269; Guzman, 998 F.3d at 567. The district court denied this motion.

Affirming the district court's denial of Guzman's motion, the Fourth Circuit emphasized that Guzman "had never effected an entry into the United States at the time he

was placed in his expedited removal proceeding." Id. Because Guzman "was merely an applicant for admission" when he was apprehended at the border and did not subsequently challenge the immigration officers' adherence to the expedited removal procedures under the INA, the court held that Guzman could not "now claim that the Constitution's Due Process Clause required more than what was provided by Congress in the INA." Id. Thus, the Fourth Circuit held that "the Due Process Clause did not entitle Guzman to counsel when apprehended at the border and promptly removed." Id.

This case is analogous to Guzman. Critically, like Guzman, Amaya-Reyes was apprehended at the border. He "never effected an entry into the United States at the time he was placed into expedited removal proceedings" and "was merely an applicant for admission, for whom the INA's admission procedures was the due process." Id. Therefore, the court holds that the Due Process Clause did not entitle Amaya-Reyes to counsel during his expedited removal proceedings.

### C.   The Administrative Procedure Act does not guarantee a right to counsel during expedited removal proceedings.

Next, Amaya-Reyes asserts that he had a right to counsel during expedited removal proceedings pursuant to the APA. However, Guzman forecloses this argument as well. In relevant part, the APA states that "a person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel[.] . . . A party is entitled to appear in person or by or with counsel or other duly qualified representative in an agency proceeding." See 5 U.S.C. § 555(b). Although the APA served as a model for the INA, see Marcello v. Bonds, 349 U.S. 302, 308-09 (1955), the INA "supplant[ed]" the APA as regards immigration proceedings, see Ardestani v. INS, 502 U.S.

129, 133 (1991). As such, the APA and INA "were not intended to function in an interlaced fashion such that the APA applies to matters not specifically addressed by the INA." Guzman, 998 F.3d at 570.

In Marcello, an alien was ordered to be deported due to a tax law violation. Among other things, Marcello argued that the deportation proceedings violated his rights under the APA because wherever an INA procedure diverted from the APA, the APA should govern, absent express language in the INA negating the APA's application. Marcello, 349 U.S. at 305. The Supreme Court rejected this argument, finding that the INA displaced the APA as to procedures due at deportation proceedings. Looking to the exclusive nature of the statutory language in the INA, the Court reasoned that "when in this very particularized adaption there was a departure from the [APA] – based on novel features in the deportation process – surely it was the intention of the Congress to have the deviation apply and not the general model." Id. at 309. As such, the Court found that the procedures described in the INA were meant to be the "sole and exclusive procedure for determining the deportability of an alien under this section" and that "prescribed deportation proceedings shall be the sole and exclusive procedure, notwithstanding the provisions of any other law." Id. at 309-10.

In Ardestani, an alien avoided deportation and sought attorneys' fees and costs under the Equal Access to Justice Act, which applied to "adversary adjudication[s]" under 5 U.S.C. § 554. Ardestani, 502 U.S. at 132-33. Relying extensively on Marcello, the Ardestani court held that "Marcello does not hold simply that deportation proceedings are subject to the APA except for specific deviations sanctioned by the INA." Id. at 134. Rather, it holds that "Congress intended the provisions of the [INA] to supplant the APA in immigration

proceedings." Id. at 133. As such, the Court determined that Ardestani's deportation proceeding was not subject to the APA and, therefore, not bound by § 554. Id. at 134.

Amaya-Reyes attempts to distinguish this case from Marcello and Ardestani. Amaya-Reyes avers that "[a]lthough the Supreme Court has ruled that the INA's procedures governing deportation hearings supersede the APA's provisions regarding adjudications in section 554, neither Marcello nor the Supreme Court case that followed it, Ardestani[ . . . ,] address the applicability of section 555 of the APA, which addresses proceedings not conducted pursuant to a hearing, to expedited removal proceedings." See ECF No. 28 at 9-10 n.4. Put plainly, Amaya-Reyes argues that Marcello and Ardestani are inapplicable because they are silent as to the applicability of § 555 of the APA in non-hearing proceedings. This argument is foreclosed by Guzman.

The Guzman court articulated:

> Guzman nonetheless seeks to distinguish Marcello and Ardestani on the ground that they held only that the APA's hearing procedures were inapplicable to the INA, saying nothing about the APA's non-hearing provisions, including § 555(b)'s counsel provision. But surely, a right to counsel is part of the hearing procedure and therefore would not be a "non-hearing" provision. More importantly, this argument fails to account for the larger context of the INA, Congress's purpose in establishing a specialized administrative procedure, and the Supreme Court's observations about the relationship between the APA and the INA. The Court emphasized that the APA served "only as a model" for the INA, and that eh INA, not the APA, would apply to deportations "based on novel features in the deportation process." Marcello, 349 U.S. at 309. It recited legislative history to reveal Congress's intent to have the INA deportation process be the exclusive procedure, "notwithstanding any other law, including the [APA]." Id. at 309-10. And were these observations in Marcello not sufficiently clear to indicate that the INA displaced the APA when it came to deportation proceedings, the Court in Ardestani left little doubt, stating, "In Marcello, we held

> that Congress intended the provisions of the [INA] to supplant
> the APA in immigration proceedings." <u>Ardestani</u>, 502 U.S. at 133.

<u>Guzman</u>, 998 F.3d at 571.

Thus, the <u>Guzman</u> court found it immaterial that the expedited removal procedure was not included in deportation procedures at the time <u>Marcello</u> and <u>Ardestani</u> were decided, rejecting Guzman's argument that the INA and APA operate as an "interlaced patchwork." <u>Id.</u> at 571. In so deciding, the court relied on the specificity and "comprehensiveness" of the INA and Congress's intent. <u>Id.</u> So too here, the INA supplants the APA in deportation proceedings, and Amaya-Reyes had no right to counsel in his expedited removal proceedings.

**D.    Amaya-Reyes's underlying removal proceeding was not fundamentally unfair.**

As discussed above, Amaya-Reyes did not have a right to counsel during his expedited removal proceedings under either the Due Process Clause or the APA. Because Amaya-Reyes cannot demonstrate that "his due process rights were violated by defects in his underlying deportation proceedings," he cannot prove fundamental unfairness under § 1326(d). <u>El Shami</u>, 434 F.3d at 664.

## IV.

The Fourth Circuit's decision in <u>Guzman</u> determines the outcome of this motion. Under <u>Guzman</u>, Amaya-Reyes's underlying expedited removal proceedings did not violate his Fifth Amendment due process right to counsel or his right to counsel under the Administrative Procedure Act. As such, his removal proceedings were not fundamentally unfair, and the court **DENIES** Amaya-Reyes's motion to dismiss the indictment, ECF No. 28.

An appropriate order will be entered.

Entered:   12/08/2021

Michael F. Urbanski
Chief U.S. District Judge
2021.12.08 16:34:47
-05'00'

Michael F. Urbanski
Chief United States District Judge